UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HARLEY MARINE NY, INC.

                Plaintiff,

      - against -                     Civil Action No.
                                             1:23-CV-163 (ANM/CFH)

BRIAN MOORE, CARVER MARINE STEEL WORKS, LLC
d/b/a CARVER COMPANIES,

                Defendants.

# MEMORANDUM OF LAW OF DEFENDANT CARVER MARINE STEEL WORKS, LLC IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**HODGSON RUSS LLP**
*Attorneys for Defendant Carver Marine Steel Works, LLC d/b/a Carver Companies*
Glen P. Doherty, Esq., (Bar Roll No. 501591)
Scott C. Paton, Esq. (Bar Roll No. 508176)
677 Broadway, Suite 401
Albany, NY 12207
518.465.2333
gdoherty@hodgsonruss.com
spaton@hodgsonruss.com

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

**PRELIMINARY STATEMENT** ....................................................................................................1

**SUMMARY OF RELEVANT FACTS** .........................................................................................2

    A.  The Parties .........................................................................................................................2

    B.  Carver Hires Moore ...........................................................................................................2

    C.  Plaintiff Complains to Carver ............................................................................................2

    D.  Carver's Response to Plaintiff's Concerns ........................................................................3

    E.  Plaintiff Commences Suit and Obtains Ex Parte Injunctive Relief ...................................5

**ARGUMENT**

    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE
    DENIED, AND THE PENDING TRO SHOULD BE VACATED ...................................5

    POINT I:  PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE
    MERITS OF ITS CLAIMS AGAINST CARVER .........................................................6

        A.  Plaintiff Cannot Succeed on its New Jersey Baes Claims as Against
        Carver, Since New Jersey Law Does Not Apply .................................................7

        B.  Plaintiff Does Not Have a Likelihood of Success in Proving that
        Carver Misappropriated Trade Secrets .................................................................9

        C.  Plaintiff Cannot Recover on Its Tortious Interference with Contract
        Claims .................................................................................................................17

        D.  Plaintiff Cannot Recover on Its Unfair Competition Claim ..............................19

    POINT II:  PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE INJURY ..........21

    POINT III:  THE ISSUANCE OF THE REQUESTED INJUNCTIVE RELIEF
    WOULD RUN CONTRARY TO THE PUBLIC INTEREST .........................................23

    POINT IV:  THE PROPOSED INJUNCTION IS IMPERMISSIBLY BROAD .............24

**CONCLUSION** .........................................................................................................................25

090839.00000 Business 23490398v2

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Federal Cases</u>

*AFM Corp. v. Therma Panel Homes Corp.*,
No. 00-CV-0055E(SC), 2001 WL 118568 (W.D.N.Y. Feb. 2, 2001) .....................................21

*Am. Civil Liberties Union v. Clapper*,
785 F.3d 787 (2d Cir. 2015)..................................................................................................6

*Anti-Monopoly, Inc. v Hasbro, Inc.*,
No. 94 CV 2120, 1995 WL 380300 (S.D.N.Y. June 27, 1995)...............................................20

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015)..................................................................................................6

*Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*,
610 F. App'x 69 (2d Cir. 2015) ...........................................................................................20

*Broker Genius, Inc. v Zalta*,
280 F. Supp.3d 495 (S.D.N.Y. 2017)..............................................................................5, 10

*Components Corp. v. Sirenza Microdevices, Inc.*,
No. 03-CV-1851(NGG)(RML), 2006 WL 2524187 (E.D.N.Y. Aug. 30, 2006)....................20

*DiGiorgio Corp. v. Mendez & Co.*,
230 F.Supp.2d 552 (D.N.J.2002) ........................................................................................18

*EarthWeb, Inc. v. Schlack*,
71 F. Supp. 2d 299 (S.D.N.Y. 1999).....................................................................................17

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)............................................................................................6, 21

*Finance One Public Co Ltd. v Lehman Bros. Special Financing Inc.*,
414 F.3d 325 (2d Cir. 2005)..................................................................................................8

*Fluor Daniel Argentina, Inc. v. ANZ Bank*,
13 F. Supp. 2d 562 (S.D.N.Y. 1998).....................................................................................22

*Ford v. Reynolds*,
316 F.3d 351 (2d Cir. 2003).................................................................................................22

*Free Country Ltd. v Drennen*,
235 F.Supp. 3d 559 (S.D.N.Y. 2016)..............................................................................13, 15

# TABLE OF AUTHORITIES, CONT.

**Page(s)**

*Friedman v. Wahrsager,*
  848 F. Supp. 2d 278 (E.D.N.Y. 2012) ............................................................. 19

*Goldblatt v. Englander Commc'ns, LLC,*
  431 F. Supp. 2d 420 (S.D.N.Y. 2006) ............................................................. 21

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007) ............................................................................ 21

*Hanson Tr. PlC v SCM Corp.,*
  774 F.2d 47 (2d Cir. 1985) .............................................................................. 5

*International Minerals & Resources, S.A. v. Bomar Resources, Inc.,*
  5 Fed.Appx. 5 (2d Cir. 2001) ......................................................................... 18

*irth Sols, LLC v Apex Data Sols. & Service, LLC,*
  No. 18-CV-6884, 2019 WL 283831 (W.D.N.Y. 2019) .................................... 10

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979) ............................................................................ 22

*Janus et Cie v. Kahnke,*
  No. 12 CIV. 7201 WHP, 2013 WL 5405543 (S.D.N.Y. Aug. 29, 2013) ............... 24

*JBC Holdings NY, LLC v. Pakter,*
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ............................................................. 19

*Kirch v. Liberty Media Corp.,*
  449 F.3d 388 (2d Cir. 2006) .......................................................................... 17

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941) ........................................................................................ 7

*Krock v. Lipsay,*
  97 F .3d 640 (2d Cir.1996) .............................................................................. 8

*Lehman v. Dow Jones & Co.,*
  783 F.2d 285 (2d Cir. 1986) .......................................................................... 11

*Mastercraft Decorators, Inc. v Orlando,*
  356 F. Supp.3d 259 (W.D.N.Y. 2018) ............................................................ 10

*Mazurek v. Armstrong,*
  520 U.S. 968, 117 S.Ct. 1865, 130 L.Ed.2d 162 (1997) ..................................... 5

## TABLE OF AUTHORITIES, CONT.

**Page(s)**

*MGR Meats Inc. v. Schweid,*
No. 10-CV-3068, 2012 WL 6675123 (E.D.N.Y. Dec. 21, 2012)............................................ 19

*Mickalis Pawn Shop,*
645 F.3d 114 (2d Cir. 2010).................................................................................................. 25

*Moore v Consolidated Edison Co. of N.Y., Inc.,*
409 F.3d 506 (2d Cir. 2005)..................................................................................................... 5

*N. Atl. Instruments, Inc. v. Haber,*
188 F.3d 38 (2d Cir. 1999)................................................................................................. 9, 10

*Oswell v. Morgan Stanley Dean Witter & Co.,*
No. 06 Civ. 5814, 2007 WL 1756027 (D.N.J. June 18, 2007) ................................................ 10

*Prod. Res. Grp., L.L.C. v. Oberman,*
No. 03 CIV. 5366 (JGK), 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003) ............................. 13

*R.R. Donnelley & Sons Co. v Marino,*
505 F.Supp.3d 194 (W.D.N.Y. 2020)............................................................................... 15, 16

*Reuters Ltd. v. United Press Int'l, Inc.,*
903 F.2d 904 (2d Cir. 1990)..................................................................................................... 5

*Rosen v. Siegel,*
106 F.3d 28 (2d Cir. 1997)................................................................................................. 6, 24

*Roy Export Co. Estab. of Vaduz v. Columbia Broadcasting,*
672 F.2d 1095 (2d Cir.1982).................................................................................................. 20

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)............................................................ 11

*Rush v. Hillside Buffalo, LLC,*
314 F. Supp. 3d 477 (W.D.N.Y. 2018)............................................................................... 6, 21

*Saratoga Vichy Spring Co. v. Lehman,*
625 F.2d 1037 (2d Cir.1980).................................................................................................. 20

*Sharma v. Skaarup Ship Management Corp.,*
916 F.2d 820 (2d Cir. 1990).................................................................................................. 19

*Silipos, Inc. v. Bickel,*
No. 1:06–CV–02205, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) ........................................ 13

iv

# TABLE OF AUTHORITIES, CONT.

**Page(s)**

*Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*,
    118 F. 3d 955 (2d Cir. 1997) ................................................................................ 10

*Structured Cap. Sol., LLC v. Commerzbank AG*,
    177 F. Supp. 3d 816 (S.D.N.Y. 2016) ................................................................... 11

*Sunbelt Rentals v McAndrew*,
    552 F. Supp.3d 319 (D.Conn. 2021) ..................................................................... 16

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
    No. 15CV211LGSRLE, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ................... 9

*Tucker Anthiony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989) ................................................................................. 22

*Turbon Inter., Inc. v Hewlett-Packard Co.*,
    769 F.Supp. 2d 262 (S.D.N.Y. 2011) .................................................................... 10

*Turtur v. Rothchild Registry Int'l, Inc.*,
    26 F.3d 304 (2d Cir.1994) ...................................................................................... 8

*USA Network v. Jones Intercable, Inc.*,
    704 F.Supp. 488 (S.D.N.Y. 1989) ......................................................................... 23

*Vera, Inc. v. Tug Dakota*,
    769 F. Supp. 451 (E.D.N.Y. 1991) ........................................................................ 22

*Waldman Pub. Corp. v. Landoll, Inc.*,
    43 F.3d 775 (2d Cir. 1994) ...................................................................................... 6

*Zabit v. Brandometry*, LLC,
    540 F.Supp.3d 412 (S.D.N.Y. 2021) ..................................................................... 14

**State Cases**

*Am. Broad Companies, Inc. v. Wolf*,
    52 N.Y.2d 394 (1981) ...................................................................................... 23, 24

*Anderson Properties, Inc. v. Sawhill Tubular Division, Cyclops Corp.*,
    149 A.D.2d 950, 540 N.Y.S.2d 82 (N.Y.1989) ..................................................... 18

*Ashland Management, Inc. v. Janien*,
    82 N.Y. 2d 395 (1993) .......................................................................................... 10

090839.00000 Business 23490398v2

# TABLE OF AUTHORITIES, CONT.

**Page(s)**

*Ferraro v. Finger Lakes Racing Assoc., Inc.*,
    182 A.D.2d 1072, 583 N.Y.S.2d 66 (N.Y.1992) ...................................................... 17

*Harold F. Shepherd Real Estate, Inc. v. Gibbs*,
    169 A.D.2d 814, 565 N.Y.S.2d 181, 182–83 (N.Y. 1991) ...................................... 18

*Lama Holding Co. v. Smith Barney Inc*.,
    668 N.E.2d 1370 (N.Y. 1996) ................................................................................ 17

*LoPresti v. Massachusetts Mut. Life Ins. Co*.,
    30 A.D.3d 474 (N.Y. App. Div. 2006) ................................................................... 20

*Marietta Corp. v. Fairhurst*,
    301 A.D.2d 734 (N.Y. App. Div. 2003) ................................................................. 23

*Mautner Glick Corp. v. Edward Lee Cave, Inc*.,
    157 A.D.2d 594, 550 N.Y.S.2d 341 (N.Y.1990) .................................................... 18

*Meghan Beard, Inc. v. Fadina*,
    82 A.D.3d 591 (App. Div. 2011) ...................................................................... 23, 24

*Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp*.,
    2010 WL 3772543 (N.J. Super. Ct. App. Div. Sept. 23, 2010) .............................. 20

**Federal Statutes**

18 U.S.C. § 1836 ................................................................................................................ 9

18 U.S.C. §1839(3) ..................................................................................................... 10, 14

vi

## PRELIMINARY STATEMENT

Defendant Carver Marine Steel Works, LLC[1] d/b/a Carver Companies ("Carver") submits this memorandum of law in opposition to Plaintiff Harley Marine NY, Inc.'s ("Harley" or "Plaintiff") motion for a preliminary injunction.

This Court should deny Plaintiff's motion in its entirety. As fully explained below, Plaintiff fails to establish that it will likely be successful on the merits of those claims asserted in its Complaint, that it will suffer irreparable harm in the event it is denied the overbroad injunctive relief that is sought, or that the public interest is furthered by such an injunction.

All of Harley's claims against Carver stem from the allegation that Carver's current employee, defendant Brian Moore ("Moore"), purportedly accessed and downloaded information that Harley claims to constitute "trade secrets." There is no allegation (and certainly no proof) that Carver engaged in any alleged misappropriation, and there is no evidence to suggest that Carver is in possession of any of the subject material, or would be inclined to use it. In addition, the material that Harley claims to constitute "trade secrets" is, in reality, publicly available and thus simply not deserving of "confidential" status. Furthermore, Plaintiff submits nothing more than general allegations of irreparable harm, without any evidentiary support whatsoever, and ignores the fact that the injunctive relief it seeks runs contrary to strong public policy concerns that militate against restraining free competition in the marketplace.

---

[1] Defendant Carver Marine Steel Works, LLC ("Carver Steel Works") has no relation to this lawsuit. It is a full-service vessel repair facility located at the Port of Coeymans, New York. Defendant Brian Moore is employed by Carver Companies Payroll, LLC ("Carver Payroll"), assigned to perform services for Coeymans Marine Towing, LLC ("Carver Towing"). Carver Payroll is the common paymaster for the various Carver companies. Carver Towing consists of a fleet of tugs and barges that primarily moves solids (for various Carver companies and customers of same). Affidavit of Nick Laraway ("Laraway Affidavit"), at ¶ 1. Notwithstanding the fact that Plaintiff sued the wrong entity – and obtained a temporary retaining order against an entity that is not related to this lawsuit – Carver Payroll and Carver Towing hereby oppose Plaintiff's motion for a preliminary injunction as if Plaintiff commenced suit against the proper party (or parties), collectively referring to the proper defendant(s) as "Carver."

## SUMMARY OF RELEVANT FACTS

### A.    The Parties

Carver is a New York entity, headquartered in Coeymans, New York, where it owns a heavy civil and commercial building construction company, a materials division with eight mines between New York and Canada, and deep water ports in Coeymans, New York, Charleston, South Carolina, Manatee, Florida, Brayton Point, Massachusetts and Bayside NB, Canada.  Carver also owns a fleet of heavy highway trucks and trailers to move solid materials by road, and a fleet of tugs and barges to move solid materials by water. Laraway Affidavit, at ¶¶ 2, 18.

Plaintiff Harley is also a New York entity, and is engaged in the marine transport of liquid petroleum products on the navigable waterways of the Northeastern United States.  Although Harley, like Carver, uses various tug boats and barges in its business, the two entities are not in competition with one another, as they transport entirely different products, and serve entirely different clients and industry sectors. *Id.,* at ¶ 19.

### B.    Carver Hires Moore

In approximately November, 2022, Carver and defendant Brian Moore ("Moore") initiated discussions about employment opportunities at Carver.   Laraway Affidavit, at ¶ 3. On approximately November 17, 2022, Carver extended an offer of employment to Moore as General Manager of Carver Towing.  Moore thereafter accepted the offer, and commenced employment on approximately December 5, 2022.  Throughout the term of his employ with Carver, Moore has worked exclusively from Carver's headquarters in Coeymans, New York. *Id.,* at ¶¶ 3-5.

### C.    Plaintiff Complains to Carver

On approximately January 20, 2023, Carver received a letter from an attorney purporting to represent Harley.  In that letter, counsel accused Moore of certain wrongdoing, including breach of an agreement limiting Moore's use of Harley information and preventing his solicitation of employees ("Confidentiality Agreement").  This letter was the first occasion that Carver learned

2

of Moore being bound by any contractual restrictions concerning the use of Harley's "confidential" material or the solicitation of Harley employees.  Laraway Affidavit, at ¶ 6; Exhibit A.

Contrary to Plaintiff's claims, Carver had no knowledge of any attempt by Moore to acquire or otherwise retain confidential information belonging to Harley, and has no reason to believe that there is any truth to such an accusation.  However, one thing is unequivocally certain – Carver does not possess, and simply has no need for, any materials that Plaintiff alleges to constitute trade secrets, or any materials or information that originated from Harley. *Id.*, at ¶ 21.

Furthermore, while it is true that Joseph Stevenson, Leonard Baldassaire and Dylan Galm contacted Carver seeking employment opportunities, Carver had no reason to suspect that these individuals had been "solicited" by Moore, or anyone, for that matter.  Carver's reputation as an industry leader, and a generous employer, has contributed to its consistent growth, and the continuous influx of job applications from interested individuals, without any "solicitation" on Moore's part.  Declaration of Brian Moore ("Moore Declaration")[2], at ¶¶ 6-9; Affidavit of Joseph Stevenson ("Stevenson Affidavit"), at ¶¶ 2-8; Declaration of Leonard Baldassaire ("Baldassaire Declaration")[3], ¶¶ 2-8; and Affidavit of Dylan Galm ("Galm Affidavit"), at ¶¶ 2-10, 16.

**D.    Carver's Response to Plaintiff's Concerns**

Upon receipt of counsel's letter, Carver's Chief Operating Officer, Nick Laraway ("Laraway"), met with Moore to discuss the accusations contained in the letter.  Moore denied misappropriating documents or information, and denied soliciting Harley's employees.  Moore did explain, however, that a number of Harley employees contacted him once he announced that he was leaving, and he told them that he was going to work for Carver.  Laraway Affidavit at ¶ 7.

---

[2]    Submitted by Defendant Brian Moore in opposition to Plaintiff's motion for preliminary injunction.

[3]    Submitted by Defendant Brian Moore in opposition to Plaintiff's motion for preliminary injunction.

Even though Carver had no reason to suspect that Moore had "solicited" any employees of Harley, not wanting to take any action that would incite a lawsuit, Laraway instructed Carver's Human Resources Department to immediately revoke any pending offers of employment to anyone currently or formerly employed by Harley.  Laraway also directed Carver's computer consultant to image (duplicate) Moore's company-issued laptop.  The consultant performed this task and forwarded the image (duplicate) to Laraway.  *Id.*, ¶¶ 9-10.

On approximately January 30, 2023, Carver replied to counsel's letter, advising that Carver was not aware of any improper access of Harley's documents, or other information by Moore, and that it did not possess any of Harley's documents or information.  Carver also advised counsel that it did not ask Moore to contact any Harley employees. *Id.*, at ¶ 11; Exhibit B.

Notwithstanding Carver's explanation, counsel persisted with increasing demands and threats of litigation.  Harley's counsel insisted on a comprehensive search of Moore's computer.  Carver agreed, proposing to use its inside legal counsel to conduct a review.  At the same time, Carver also advised counsel that, as a show of good faith, it was voluntarily withdrawing all pending offers to Harley's current or former employees.  Counsel agreed to the protocol, and Carver proceeded to review the image of Moore's laptop.  This review did not locate any Harley documents on Moore's laptop.  *Id.*, at ¶ 12.

Notwithstanding counsel's agreement to Carver's proposal concerning the search of Moore's laptop, on February 2, 2023, counsel informed Carver that Plaintiff refused to accept the results of Carver's review.  Counsel then provided a list of documents and search terms to be included in any further review.  In response, Carver asked its outside information technology consultant to search Moore's computer, using the parameters provided by counsel.  The consultant performed such a review, and reported that he did not find any of the documents or search terms

on Moore's laptop, and no evidence indicated that such information ever existed on the computer.

The consultant also searched Carver's network, which search likewise came up empty. *Id.,* at ¶¶

13-15.

E.    **Plaintiff Commences Suit and Obtains Ex Parte Injunctive Relief**

On February 7, 2023, Harley commenced a lawsuit against "Brian Moore and Carver

Marine Steel Works, LLC d/b/a Carver Companies." Docket No. 1. On February 15, 2023, Harley

applied *ex parte* for a temporary restraining order. Docket No. 7. The Court granted Plaintiff's

application on February 16, 2023. Docket No. 11.

As more fully explained below, Harley's motion for a preliminary injunction should be

denied, and the pending temporary restraining order should be vacated.

## ARGUMENT

### PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED, AND THE PENDING TRO SHOULD BE VACATED

For the reasons set forth below, Plaintiff's attempt to obtain extreme injunctive relief as

against Carver should be denied, and the pending temporary restraining order should be vacated.

"A preliminary injunction is 'one of the most drastic tools in the arsenal of judicial

remedies' and courts have cautioned that it should be 'used with great care.'" *Broker Genius, Inc.*

*v Zalta*, 280 F. Supp.3d 495, 509 (S.D.N.Y. 2017) (quoting *Hanson Tr. PlC v SCM Corp.*, 774

F.2d 47, 60 (2d Cir. 1985)). While the decision of "[w]hether a preliminary injunction should

issue or not rests in the discretion of the district court," *Reuters Ltd. v. United Press Int'l, Inc.*, 903

F.2d 904, 907 (2d Cir. 1990) it "should not be granted unless the movant, by a clear showing,

carries the burden of persuasion" *Moore v Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506,

510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 130

L.Ed.2d 162 (1997)). In other words, "preliminary injunctions are extraordinary and drastic

remedies, which are never awarded as of right or as routine matters." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483 (W.D.N.Y. 2018) (citations and quotations omitted).

In the Second Circuit, "[a] party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits . . . ; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal alterations and citation omitted); *see also Am. Civil Liberties Union v. Clapper,* 785 F.3d 787, 825 (2d Cir. 2015).

As to the permissible scope of sought-after injunctive relief, a preliminary injunction must be "'narrowly tailored to fit specific legal violations' and to avoid `unnecessary burdens on lawful commercial activity.'" *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 119 (2d Cir. 2009) (quoting *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)). The Second Circuit explained that "[t]his rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed." *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997) (internal quotation marks omitted).

## POINT I
## PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS AGAINST CARVER

The allegations against Carver are sparse, cursory, and made entirely upon information and belief. Only three counts exist in the Complaint as against Carver and, within each of those counts (that are alleged as against both Carver and Moore), there is only a single paragraph that describes, in general and vague terms, purportedly improper conduct on the part of Carver.  Docket No. 1, ¶¶ 65, 86, 93. Specifically, all of the claims asserted against Carver stem from the allegation that Moore purportedly misappropriated "trade secrets" from Harley at a time when he was employed by Carver, such that these acts were allegedly performed either at the direction of, or for the benefit

of, Carver. Based upon this cursory allegation, made entirely "upon information and belief," Plaintiff alleges that Carver (1) misappropriated "trade secrets" in violation of New Jersey and Federal law; (2) has engaged in unfair competition, in violation of New Jersey law. *Id.*

**A.    Plaintiff Cannot Succeed on its New Jersey Baes Claims as Against Carver, Since New Jersey Law Does Not Apply**

Throughout its Complaint, Plaintiff disingenuously asserts that the "Confidentiality Agreement includes a choice-of-law provision which provides that New Jersey Law will apply **to this proceeding.**" Docket No. 1, ¶¶ 47, 70, 77, 84 and 91 (emphasis added).  Not only is this a blatant mis-characterization of the express language contained in the Confidentiality Agreement, but nowhere does Plaintiff explain how Carver (a non-signatory to that agreement) could possibly be bound by its terms.

Contrary to Plaintiff's allegations, the Confidentiality Agreement expressly states:  "**This Agreement** shall be governed by, construed and enforced in accordance with the laws of the state where [Moore] was physically employed by [Plaintiff] immediately after the signing of this Agreement."  Exhibit A to Laraway Affidavit (emphasis added).  Nowhere does this document specify New Jersey law in particular, and nowhere does it purport to expand the application of such law to cover non-contractual claims.  By its express terms, this choice-of-law provision is limited to only contract-based claims that exist as between Moore and Plaintiff. Any effort to expand the contours of this contractual language to encompass the non-contractual claims asserted against Carver should be rejected.

In diversity cases, a federal court must look to the laws of the forum state in which it sits to resolve conflict of laws issues. *See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941). According to New York law, in order for a contractual choice of law provision to apply to tort claims, the language of the provision must be "sufficiently broad" to encompass the entire

relationship between the contracting parties, and not just the subject matter of the contract. *See Krock v. Lipsay*, 97 F .3d 640, 645 (2d Cir.1996) (emphasis added).  Where, as here, the choice-of-law provision is limited to construction of the contract itself, that provision will not extend to include tort claims.  *See Finance One Public Co Ltd. v Lehman Bros. Special Financing Inc.,* 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract"); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("Under New York law, a choice-of-law provision indicating that the contract will be governed by a certain body of law does not dispositively determine that law which will govern [tort claims] arising incident to the contract"); *Turtur v. Rothchild Registry Int'l, Inc*., 26 F.3d 304, 309–310 (2d Cir.1994) (holding that mortgage's choice-of-law language, which was specific to the mortgage itself, was not broad enough to govern non-contract claims).

Here, the Confidentiality Agreement has expressly limited its choice-of-law provision to the contract itself, and thus has no applicability to any tort claims that have been asserted in this action. Leaving this issue aside, the fact remains that Carver was not a signatory to the Confidentiality Agreement, and did not even know of its existence until immediately prior to the commencement of suit.  Laraway Affidavit, ¶ 6.  In short, because Plaintiff cannot establish that Carver is bound by whatever obligations exist under the statutory or common law of the state of New Jersey, Plaintiff cannot succeed on any such claims as against Carver.  To the extent the Court is inclined to interpret Plaintiff's state-law claims as arising under New York law (i.e., the state wherein all parties reside and the allegedly tortious conduct occurred), the following discussion addresses each of said claims in turn.

**B.      Plaintiff Does Not Have a Likelihood of Success in Proving that Carver Misappropriated Trade Secrets**

The first claim leveled against Carver (Count II of the Complaint) alleges that Carver violated the Defend Trade Secrets Act, 18 USC § 1836 ("DTSA") and state law by misappropriating Harley's "trade secrets."  Plaintiff will not succeed on either of these claims.

The sole allegation of trade-secret misappropriation against Carver is found in Paragraph 65 of the Complaint (Docket No. 1), in which Plaintiff asserts:

> Upon information and belief, Moore misappropriated HMNY's trade secrets for his own benefit and the benefit of Carver.  B. Moore and Carver have utilized and disclosed and/or inevitably will utilize and disclose HMNY's trade secrets, which were obtained unlawfully, for their own benefit, for the purpose of competing with HMNY unfairly.

As this language makes clear, Plaintiff does not allege that Carver misappropriated anything.  Instead, Plaintiff alleges that Moore committed such acts, and implies that Carver either currently possesses these "trade secrets" or may come to possess them at some point in the future. These allegations fail to establish Carver's misappropriation, under either Federal or state law.

The requirements for showing a misappropriation of a trade secret are similar under New York state and federal law:

> Under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43–44 (2d Cir. 1999). Similarly, under the DTSA, a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. Sept.

23, 2016) (quoting 18 U.S.C. § 1839(3) (A)–(B))." *North Atl. Inst., Inc. v. Haber,* 188 F. 3d 38, 43-44 (2d Cir. 2009).[4]

### 1. Plaintiff Cannot Establish that the Information at Issue Constitutes "Trade Secrets"

Plaintiff cannot show that the information purportedly misappropriated qualifies as a "trade secret" in the first place. Generally, "a trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know how to use it.' " *North Atl. Inst., Inc. v. Haber,* 188 F. 3d 38, 44 (2d Cir. 1999) (quoting *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc*., 118 F. 3d 955, 968 (2d Cir. 1997)). New York courts consider the following factors in determining whether there is a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *North Atl. Ins., Inc,* 188 F. 3d at 44 (quoting *Ashland Management, Inc. v. Janien*, 82 N.Y. 2d 395, 407 (1993).

Importantly, "[c]onclusory assertions that something constitutes a trade secret . . . are insufficient," *Mastercraft Decorators, Inc. v Orlando*, 356 F. Supp.3d 259, 270 (W.D.N.Y. 2018), and instead a "clear showing" must be made. *irth Sols, LLC v Apex Data Sols. & Service, LLC*, No. 18-CV-6884, 2019 WL 283831 (W.D.N.Y. 2019). The "'most important consideration' in determining whether information is a trade secret is 'whether the information was secret.' " *Broker*

---

[4]    Similarly "[t]o state a claim for misappropriation of trade secrets [under New Jersey law, the plaintiff must] establish that: '(1) a trade secret exists; (2) that plaintiff took reasonable precautions to maintain the secrecy of the information; and (3) the defendant used the secret information to the detriment of the plaintiff.'" *Turbon Inter., Inc. v Hewlett-Packard Co*., 769 F.Supp. 2d 262, 267 (S.D.N.Y. 2011) (quoting *Oswell v. Morgan Stanley Dean Witter & Co*., No. 06 Civ. 5814, 2007 WL 1756027, at *6 (D.N.J. June 18, 2007)).

*Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 514 (S.D.N.Y. 2017) (quoting *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 298 (2d Cir. 1986)). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Structured Cap. Sol., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016) (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)).

Plaintiff alleges that Moore improperly downloaded a very specific set of data pertaining to six tugboats that are within its fleet, and suggests that possession of this information would place Carver at an unfair competitive advantage. (Declaration of Kelly Moore ("Moore Declaration")[5], at ¶¶ 33-37). Specifically, Harley alleges that Moore acquired "secret" information concerning the seaworthiness, ownership history, travel history, equipment list and specifications for these vessels, and that the possession of this information would allow a competitor to undercut Harley's pricing and "provide[s] a blueprint on how to build a fleet that would compete with [Plaintiff]" (Moore Declaration, at ¶ 36). This is simply not true.

The Court's attention is directed to the accompanying affidavit of Stephen Kelly, Carver's President of Sales and Business Development. As Mr. Kelly explains, all of the information characterized by Harley as a "trade secret" is, in fact, publicly available through a variety of on-line resources. Specifically, the website www.tugboatinformation.com maintains a free database of companies that provide maritime tugboat services. By simply clicking on a company's name, the user is then shown a complete listing of all tugs that have ever been registered to that company – both active and those that have been retired or sold. The user then simply clicks on the name of a tugboat, and is shown a complete itemization of that vessel's specifications, as well as its

---

[5]    Submitted by Plaintiff in support of its motion.

ownership history. In short, all of the tugboat information that Harley claims to be a "trade secret" is readily available to the general public – a fact that is established by the printouts attached to Mr. Kelly's affidavit. Affidavit of Stephen Kelly ("Kelly Affidavit"), at ¶¶ 6-8; Exhibits A, B.

As Mr. Kelly further explains, additional public sources of Harley's supposed "trade secrets" exist through a website maintained by the U.S. Coast Guard, https://cgmix.uscg.mil, which contains a database of all vessels that have been registered with the U.S. Coast Guard – which necessarily includes all vessels that are used by Harley in its maritime operations.  Simply by inputting the vessel's name, the user is given a bounty of information that includes not only a set of specifications similar to that available on www.tugboatinformation.com, but also a history of any deficiencies concerning that vessel that have been observed by the Coast Guard.  (Kelly Affidavit, at ¶¶ 9-10).  Once again, Mr. Kelly attaches to his affidavit a printout of the Coast Guard's information pertaining to Harley's tugboat The Jillian Irene, which contains not only the vessel's specifications, but even those safety concerns that have been noted by the authorities. Exhibit C to Kelly Affidavit.

Finally, Mr. Kelly draws the Court's attention to www.marinetraffic.com, which is another public website.  This site track vessels worldwide, including their routes of travel. That website shows a vessel's current location, its details and specifications, recent ports of call and even details concerning its most recent voyage. Kelly Affidavit, at ¶ 11. Indeed, attached as Exhibit "D" to Mr. Kelly's affidavit are screenshots of some of the data available concerning The Jillian Irene – including its most recent trip from New Haven to New York. Exhibit D to Kelly Affidavit.

Finally, as Mr. Kelly emphasizes, Carver does not compete with Harley, and the two companies do not bid against one another for the same work. Thus, aside from being publicly

available, this information simply has no relevance to Carver's operations. Kelly Affidavit, at ¶ 13.

Notwithstanding the above, Plaintiff seeks to transform the above public data into a "trade secret" simply by plugging it into a spreadsheet in order to determine its costs, and to then use that information to prepare its pricing to potential customers. Docket No. 1, ¶ 39; Affidavit of Matthew Godden, at ¶¶ 25-27.   Plaintiff's efforts should be rejected.

"Data relating to pricing can constitute a trade secret . . . [only] where a company uses some type of proprietary formula that gives it a unique advantage, such as a complex pricing or trading algorithm in a financial business." *Free Country Ltd. v Drennen,* 235 F.Supp. 3d 559, 566 (S.D.N.Y. 2016) (citations omitted).   In contrast, "information relating to [Plaintiff's] underlying mechanics, **such as the prices of materials and costs of manufacturing**, are not trade secrets because 'any seller's publicly-available prices signal to competitors some information about the underlying mechanics of the seller's pricing structure.'" *Id*. (emphasis added) (quoting *Silipos, Inc. v. Bickel,* No. 1:06–CV–02205, 2006 WL 2265055, at *4–5 (S.D.N.Y. Aug. 8, 2006); *see Prod. Res. Grp., L.L.C. v. Oberman*, No. 03 CIV. 5366 (JGK), 2003 WL 22350939, at *14 (S.D.N.Y. Aug. 27, 2003).

Here, Plaintiff seeks to transform data relating to its costs of production (i.e., fuel costs, fixed costs, etc.) into a "trade secret" simply because it takes those costs into consideration when setting its prices. However, neither New York nor federal law support that contention. Specifically, in *Free Country v Drennen*, the Southern District rejected the plaintiff's attempts to characterize "pricing information", consisting of the data used by it to establish its prices, as trade secrets.   As the court explained, the plaintiff failed to show that its pricing mechanism consisted of anything other than "industry practice" by using "'basic sourcing information' commonly used

in the industry and easily reverse engineered", which was not entitled to trade secret status. *Free Country*, 25 F. Supp. 3d at 567.

### 2.    Plaintiff Has Not Established that it Took Reasonable Measure to Protect Its "Trade Secrets"

In order to pursue a claim of trade secret misappropriation, the plaintiff must demonstrate that it took reasonable measures to guard the secrecy of the information. See 18 U.S.C. §1839(3). Here, Plaintiff's own Complaint reveals that it permits these "secrets" to be housed in a dropbox storage system accessible by both present and former employees. By its own admission, Plaintiff failed to take **any** steps to terminate Moore's purported ability to access the dropbox database after his employment terminated. Furthermore, Plaintiff relies upon the existence of the Confidentiality Agreement to illustrate its efforts to maintain secrecy. However, courts are "skeptical that a confidentiality agreement alone can 'suggest the existence of a trade secret.'" *Zabit v. Brandometry*, LLC, 540 F.Supp.3d 412, 424 (S.D.N.Y. 2021).

The plain fact remains that Harley has already allowed its alleged "trade secrets" to be placed in the public domain, as established above. Thus, Harley has failed to establish that it took reasonable measures to protect the confidentiality of its supposed "trade secrets."

### 3.    Plaintiff Cannot Establish that Carver "Misappropriated" Any Purported "Trade Secrets"

Notwithstanding the above, the most glaring shortfall of Plaintiff's trade-secret misappropriation claim as against Carver is the complete absence of any detailed allegation – let alone proof – to show that Carver actually possesses, is using, or has disclosed, any "trade secrets" belonging to the Plaintiff. This factor alone requires a denial of injunctive relief.

#### a.    Carver Does Not Possess the Material at Issue

The Laraway and Kelly affidavits establish that Carver does not possess, and has no desire to possess, any of the information that Plaintiff claims to have been misappropriated by Moore.

Furthermore, as explained by Carver's outside information technology consultant, Carver performed an exhaustive search of Moore's Carver-issued laptop, as well as a search of Carver's entire computer server and network, using the exact search terms that had been demanded by Plaintiff's counsel. Affidavit of Morgan Cooper ("Cooper Affidavit"), at ¶¶ 2-5. Those searches established that Carver does not possess, and never has possessed, that which Plaintiff claims to have been taken. Laraway Affidavit, at ¶¶ 7-15; Cooper Affidavit, at ¶¶ 2-5. In light of this incontrovertible proof, Plaintiff is not likely to prevail on its claim of trade secret misappropriation as against Carver.

Once again, the Southern District decision in *Free Country Ltd. v Drennen* is instructive. In that case, the plaintiff sought a preliminary injunction as against the current employers of various individuals that plaintiff alleged were wrongfully in possession of its trade secrets. The court expressly refused to enjoin the corporate defendants, simply because of their status as the employers of the alleged wrongdoers. As the court explains:

> "The Court finds at the outset that there is no evidence of any wrongdoing by the corporate defendants, Rousso and Santa Fe. While their clear (and legitimate) intent was to go into direct competition with Free Country, they appear to have been unaware prior to this lawsuit that defendants Drennen and Vander Wyden transferred any allegedly confidential information to their personal possession, and there is no evidence that Rousso or Santa Fe have ever come into possession of such information. . . . Accordingly, the Court finds that plaintiff has failed to show a likelihood of success on the merits against defendants Rousso and Santa Fe." *Free Country*, 25 F. Supp. 3d, at 566.

Similarly, in *R.R. Donnelley & Sons Co. v Marino*, 505 F.Supp. 3d 194 (W.D.N.Y. 2020), the Court denied injunctive relief sought against a corporate defendant who had hired an individual that the plaintiff claimed to have misappropriated its trade secrets. In that case, as here, there was no credible evidence to suggest that the corporate defendant was in possession, or was using the

alleged trade secrets at issue, and instead its only act was to employ the individual defendant.  In

denying injunctive relief, and dismissing the complaint altogether, the Court noted that as follows:

> "Plaintiffs . . . cite no case law in support of the proposition that a party can be brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer. Similarly, Plaintiffs offer no case law in support of the notion that an individual becomes an agent of a corporation for purposes of a trade secret misappropriation claim simply by accepting an offer of employment." *Id.*, at 207.

Here, as in both *Free Country* and *R.R. Donnelly*, Harley has made no showing that Carver

is in possession of anything belonging to it (whether denominated a "trade secret" or otherwise),

and its motion for injunctive relief should therefore be denied.

### b.    Harley Cannot Rely On the "Inevitable Disclosure" Doctrine

As if acknowledging its inability to show that Carver possesses any of its "trade secrets",

Harley suggests that it nevertheless possesses a likelihood of success because "Carver will

inevitably use or disclose [Harley's] trade secrets" (Plaintiff's Memorandum of Law, at p. 18).  In

other words, Harley seeks to invoke the seldom-used "inevitable disclosure doctrine" to breathe

life into is defective claim of misappropriation. This attempt should be rejected.

"The 'inevitable disclosure' doctrine stands for the proposition that in some circumstances,

a court will find that a defendant cannot help but reveal trade secrets." *Sunbelt Rentals v*

*McAndrew*, 552 F. Supp.3d 319 (D.Conn. 2021).

> "[I]n its purest form, the inevitable disclosure doctrine treads an exceedingly narrow path through judicially disfavored territory. Absent evidence of actual misappropriation by an employee, the doctrine should be applied in only the rarest of cases. Factors to consider in weighing the appropriateness of granting injunctive relief are whether: (1) the employers in question are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; and (3) the trade secrets at issue are highly valuable to

both employers." *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310 (S.D.N.Y. 1999).

Here, none of the factors required to invoke this "judicially disfavored" doctrine exist. Carver and Harley do not compete with one another, and do not serve the same industry sectors. Laraway Affidavit at ¶¶ 1, 2, 19; Kelly Affidavit, at ¶ 13.  In addition, the information at issue is not "highly valuable" to anyone – and is of no value whatsoever to Carver. Kelly Affidavit, at ¶¶ 6-13.  Thus, Harley may not rely upon the "inevitable disclosure" doctrine to cure the fatal flaws that plague its claim of misappropriation. *See, Earthweb, Inc*., 71 F. Supp., 310-312.

**C.     Plaintiff Cannot Recover on Its Tortious Interference with Contract Claims**

As its second claim against Carver (denominated Count V in the Complaint), Plaintiff alleges that Carver has tortiously interfered with the Confidentiality Agreement by hiring Moore "for the purpose of accessing [Plaintiff's] confidential and proprietary information, which has, and continues to cause B. Moore to breach is Confidentiality Agreement." Docket No. 1, at ¶ 86. Plaintiff does not have a likelihood of success on this claim.

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.' " *Kirch v. Liberty Media Corp*., 449 F.3d 388, 402-03 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc*., 668 N.E.2d 1370, 1375 (N.Y. 1996)). Because Plaintiff is unable to establish these required elements, it does not have a likelihood of success on this claim.

**1.     Carver Was Unaware of the Confidentiality Agreement and Therefore Could Not Have Tortiously Interfered With It**

An essential element of a tortious-interference claim is the defendant's knowledge of the existence of the contract with which it is alleged to have interfered.  *See Ferraro v. Finger Lakes*

*Racing Assoc., Inc.*, 182 A.D.2d 1072, 583 N.Y.S.2d 66, 67–68 (N.Y.1992) ("defendant demonstrated its entitlement to judgment in its favor as a matter of law [dismissing cause of action for tortious interference with contract] by establishing that it had no knowledge of plaintiffs' contacts with owners of thoroughbred horses and did not procure their breach"); *Harold F. Shepherd Real Estate, Inc. v. Gibbs*, 169 A.D.2d 814, 565 N.Y.S.2d at 181, 182–83 (N.Y. 1991) (reversing denial of summary judgment dismissing claim of tortious interference with contract where defendant had no knowledge of contract between plaintiff and third party); *Anderson Properties, Inc. v. Sawhill Tubular Division, Cyclops Corp.*, 149 A.D.2d 950, 540 N.Y.S.2d 82 (N.Y.1989).

Here, the uncontroverted proof establishes that Carver was not aware of the Confidentiality Agreement until receiving the cease-and-desist letter penned by Harley's counsel just prior to the commencement of suit. Laraway Affidavit, at ¶ 6. Absent proof of such knowledge, Harley's tortious-interference claim is fatally deficient, and subject to dismissal. *See Mautner Glick Corp. v. Edward Lee Cave, Inc.*, 157 A.D.2d 594, 550 N.Y.S.2d 341 (N.Y.1990) (lack of knowledge about existence of contract is fatal to interference with contractual relations claim).[6]

## 2.    Carver Did Not Cause Moore to Purportedly Breach the Confidentiality Agreement

Harley's tortious-interference-with-contract claim is further deficient because Harley cannot establish that Carver caused Moore to breach the Confidentiality Agreement.

In order to recover on its claim, Harley must prove that the breach would not have occurred "but for" Carver's conduct. *International Minerals & Resources, S.A. v. Bomar Resources, Inc.*, 5

---

[6]    A similar result occurs under New Jersey law (as Plaintiff alleges), insofar as New Jersey requires not only that defendant possesses knowledge of the contract, but that its "intentional interference was done with malice." *DiGiorgio Corp. v. Mendez & Co.*, 230 F.Supp.2d 552, 565 (D.N.J.2002).  Here, aside from being unable to show that Carver knew of the Confidentiality Agreement, Harley has not even alleged that Carver acted with "malice."

Fed.Appx. 5, 8 (2d Cir. 2001) (noting that the causation required in a tortious interference with contract action is that " 'but for' the activities of the defendant, there would have been no breach of contract"); *JBC Holdings NY, LLC v. Pakter,* 931 F. Supp. 2d 514, 534-535 (S.D.N.Y. 2013) (noting that, in a tortious interference with contract action, plaintiffs must allege that third party's actions were the "but for" cause of their injury); *MGR Meats Inc. v. Schweid*, No. 10-CV-3068, 2012 WL 6675123, at *2 (E.D.N.Y. Dec. 21, 2012) ("Plaintiff must also allege that the breach would not have occurred 'but for' the conduct of the defendants.") (citing *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 297 (E.D.N.Y. 2012)).

Here, Harley's Complaint does not allege that Carver caused Moore's purported breach of the Confidentiality Agreement, and none of the submissions offered in support of a preliminary injunction contain any proof to suggest that this was the case. In sharp contrast, the proof adduced by Carver establishes that it (1) was unaware of the Confidentiality Agreement; and (2) instructed Moore that he was not permitted to bring to Carver any material or information belonging to his former employer. In light of this compelling (and uncontradicted) proof, Harley cannot establish that, but for Carver's actions, Moore would not have breached the Confidentiality Agreement. As such, Harley's claim is fatally deficient. *Sharma v. Skaarup Ship Management Corp*., 916 F.2d 820, 828 (2d Cir. 1990) (finding no tortious interference because plaintiff did not demonstrate that "there would not have been a breach but for the activities of defendants").

**D.    Plaintiff Cannot Recover on Its Unfair Competition Claim**

As its third and final claim against Carver, Plaintiff alleges the tort of unfair competition, which is encapsulated by a single sentence: "Carver has also engaged in unfair competition by hiring and continu[ing] to employ B. Moore, on information and belief, for the purpose of accessing HMNY's confidential information for competitive benefit." Docket No. 1, at ¶ 93.

"The tort of unfair competition is not some amorphous catch-all claim to be appended to

any complaint involving claims that a competitor has injured a business rival." *Anti-Monopoly, Inc. v Hasbro, Inc.*, No. 94 CV 2120, 1995 WL 380300, at *7 (S.D.N.Y. June 27, 1995). The tort "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Export Co. Estab. of Vaduz v. Columbia Broadcasting*, 672 F.2d 1095, 1105 (2d Cir.1982). *See also, Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another."). An unfair competition claim "will fail where a plaintiff cannot demonstrate `the bad faith misappropriation of a commercial advantage which belonged exclusively to him.'" *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) (quoting *LoPresti v. Massachusetts Mut. Life Ins. Co.*, 30 A.D.3d 474, 476 (N.Y. App. Div. 2006).[7]

Here, Harley cannot recover on its unfair competition claim because it cannot establish that Carver acted in "bad faith" to "misappropriate" anything. In short, for the same reasons that Harley cannot establish that Carver misappropriated its trade secrets, Harley will be unable to recover on its claim for unfair competition. *See R.R. Donnelley & Sons Co. v Marino, supra*; *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851(NGG)(RML), 2006 WL 2524187, at *29 (E.D.N.Y. Aug. 30, 2006) ("Where an unfair competition claim duplicates a claim for misappropriation of trade secrets, the two claims generally rise or fall together.").

---

[7]    Similarly, under New Jersey law, "unfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp.*, 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010).

090839.00000 Business 23490398v2

<u>**POINT II**</u>

<u>**PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE INJURY**</u>

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). As the Second Circuit has explained, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (emphasis added) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

"An irreparably injury is one that cannot be redressed through a monetary award. Where monetary damages are adequate compensation, a preliminary injunction will not issue. Monetary loss will not suffice unless the movant shows damage that cannot be rectified by financial compensation." *Rush v. Hillside Buffalo*, 314 F. Supp. 3d 477, 484 (W.D.N.Y. 2018) (quoting *Goldblatt v. Englander Commc'ns, LLC,* 431 F. Supp. 2d 420, 424-25 (S.D.N.Y. 2006). It is well settled, however, that a movant's conclusory statements that it will suffer irreparable harm and damage will not establish irreparable harm. *See AFM Corp. v. Therma Panel Homes Corp.*, No. 00-CV-0055E(SC), 2001 WL 118568, at *4 (W.D.N.Y. Feb. 2, 2001).

Here, Plaintiff's Complaint makes only a passing reference to having "no adequate remedy at law and . . . suffering irreparable injury" at the conclusion of each claim. *See* Docket No. 1, at ¶¶ 59, 68, 75, 82, 89, 96. However, a review of the remaining allegations in the Complaint establish that Plaintiff's claims are fully compensable by a monetary award, and that Plaintiff is, in reality, seeking to recover exclusively for a claimed economic injury. Specifically, Plaintiff's Complaint repeatedly recites:

> As a direct and proximate cause of . . . Carver's misappropriations, HMNY has suffered, and continues to suffer, substantial damages,

21

> including, without limitation, divulgement of its proprietary and
> confidential . . . information and loss of economic advantage, and,
> accordingly HMNY is entitled to damages in an amount to be determined
> at trial.
>
> HMNY will continue to be directly and proximately damaged if . . .
> Carver [is] not immediately and permanently enjoined . . .

Docket No. 1, at ¶¶ 66-67; 87-88, 94-95. These recitals are repeated throughout the complaint,

wherein it acknowledges seeking a recovery based upon a "loss of economic advantage" in the

form of "damages in an amount to be determined at trial." Docket No. 1, at ¶¶ 57, 73, 80, 87, 94.

It is well settled that, in order to constitute irreparable harm, the alleged injury "must be

one requiring a remedy of more than mere economic damages." *Ford v. Reynolds*, 316 F.3d 351

(2d Cir. 2003) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.

1989); *see, Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc*., 596 F.2d 70 (2d Cir. 1979). Clearly,

any purported loss of business or economic loss claimed by Plaintiffs may be calculated and are

not injuries that constitute irreparable harm. *See Fluor Daniel Argentina, Inc. v. ANZ Bank*, 13 F.

Supp. 2d 562, 564 (S.D.N.Y. 1998) ("As a matter of law, monetary loss alone will generally not

amount to irreparable harm . . . and therefore a preliminary injunction usually is inappropriate

where the potential harm is strictly financial").

Plaintiff attempts to establish an injury deserving of injunctive relief in the Declaration of

Kelly Moore, wherein Mr. Moore alleges that the supposed trade secrets at issue "would be highly

valuable for a competitor or a business trying to compete with HMNY, such as Carver, because it

would provide a blueprint on how to build a fleet that would compete with HMNY." Moore

Declaration, at ¶ 36.  However, this allegation (even if it were true) falls well short of the mark. In

this regard, the law is well settled that "where the viability of a business is not threatened and

monetary damages is adequate compensation a preliminary injunction will not issue." *Vera, Inc.

v. Tug Dakota*, 769 F.Supp. 451 (E.D.N.Y. 1991).  In other words, where the alleged unlawful

conduct threatens only to disrupt, but not destroy, the movant's business operations, the movant possesses an adequate remedy at law and irreparable injury is absent – as a matter of law. *See USA Network v. Jones Intercable, Inc*., 704 F.Supp. 488 (S.D.N.Y. 1989).

### POINT III
### THE ISSUANCE OF THE REQUESTED INJUNCTIVE RELIEF WOULD RUN CONTRARY TO THE PUBLIC INTEREST

The public's interest, as embodied by New York principles of public policy, weighs heavily against granting the sought-after injunction, which seeks to prevent Carver from, among other things, "directly or indirectly soliciting or inducing clients of [Plaintiff]", and "from engaging or associating with Defendant B. Moore to compete with [Plaintiff] in the maritime transportation industry in the United States." Docket No. 11 [OTSC], at p. 2.

Issuance of the requested injunction, which seeks to limit the ability of defendant Moore and his new employer to compete with Plaintiff would, in effect, constitute "an implied-in-fact restrictive covenant not to compete." *Marietta Corp. v. Fairhurst*, 301 A.D.2d 734, 737 (N.Y. App. Div. 2003). Implying a non-competition agreement flies in the face of New York's strong public policy disfavoring such restrictive covenants. Indeed, under New York law, generally, "'anticompetitive covenants covering the postemployment period will not be implied' and must be express." *Meghan Beard, Inc. v. Fadina*, 82 A.D.3d 591, 592 (App. Div. 2011) (quoting *Am. Broad Companies, Inc. v. Wolf* 52 N.Y.2d 394, 406 (1981)). This is entirely consistent with New York's "[w]ell entrenched state public policy considerations disfavor[ing]" restrictive covenants in employment. *Id.; see also Am. Broad. Companies, Inc*., 52 N.Y.2d at 404 ("There is, in short, general judicial disfavor of anticompetitive covenants contained in employment contracts"). The strong public policy disfavoring restrictive covenants is grounded in principles that "the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition" and the "powerful considerations

of public policy which militate against sanctioning the loss of a man's livelihood." *Am. Broad Companies, Inc.*, 52 N.Y.2d at 404 (citations and quotation marks omitted).

Here, Plaintiffs request that this Court impose an "unlimited, unbargained-for restrictive covenant" on threadbare allegations. *Janus et Cie v. Kahnke*, No. 12 CIV. 7201 WHP, 2013 WL 5405543, at *4 (S.D.N.Y. Aug. 29, 2013). Such an unlimited restrictive covenant—even if it were expressly written and agreed upon—is unenforceable because the lack of temporal restriction renders it unreasonable; surely, any implied-in-fact restrictive covenant that Plaintiffs seek would also be unenforceable for the same reason. *See Meghan Beard, Inc. v. Fadina*, 82 A.D.3d 591, 592 (N.Y. App. Div. 2011). Given that the strong public policy considerations that weigh against the imposition of an implied restrictive covenant, Harley's request for a preliminary injunction should be denied.

## POINT IV
## THE PROPOSED INJUNCTION IS IMPERMISSIBLY BROAD

The Second Circuit follows the "rule against broad, vague injunctions," which "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed." *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997). Here, Plaintiffs' proposed preliminary injunction violates that rule.

As outlined above, Harley seeks a preliminary injunction that prevents Carver from, among other things, "directly or indirectly soliciting or inducing clients of [Plaintiff]", and "from engaging or associating with Defendant B. Moore to compete with [Plaintiff] in the maritime transportation industry in the United States." Docket No. 11 (OTSC), at p. 2. However, a review of the Complaint shows that **Plaintiff has not alleged any claims against Carver that relate to the solicitation of Plaintiff's employees**. Instead, all of the claims leveled against Carver arise exclusively from the (misplaced) allegations of trade-secret misappropriation and the purported misuse of Plaintiff's

24

confidential information.  Docket No. 1, at ¶¶ 65, 86, 93.  Thus, none of the claims asserted against Carver relate to Carver's ability to hire the former employees of Plaintiff, and no portion of Plaintiff's Complaint alleges that it is somehow wrong for Carver to solicit Plaintiff's employees. However, the injunctive relief sought by Plaintiff seeks to curtail this very activity, which is **well outside the four corners of the Complaint**.

Because the injunctive relief sought by Plaintiff goes beyond the contours of Plaintiff's claims against Carver in the Complaint itself, Plaintiff's proposed injunction (as well as the temporary restraining order that is currently in place) is impermissibly broad, and should be denied on this basis alone.  *See, Mickalis Pawn Shop*, 645 F.3d 114, 145 (2d Cir. 2010) ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation.")

## CONCLUSION

For the foregoing reasons, Carver respectfully requests that Plaintiffs' request for a preliminary injunction be denied in its entirety, and the pending temporary restraining order be immediately vacated.

Dated:         March 8, 2023

                                  **HODGSON RUSS LLP**

                                  *s/Glen P. Doherty*
                                  Glen P. Doherty, Esq. (Bar Roll No. 501591)
                                  Scott C. Paton, Esq. (Bar Roll No. 508176)
                                  *Attorneys for Defendant Carver Marine Steel Works, LLC d/b/a Carver Companies*
                                  677 Broadway, Suite 401
                                  Albany, New York 12207
                                  (518) 433-2333
                                  gdoherty@hodgsonruss.com
                                  spaton@hodgsonruss.com