**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

HARLEY MARINE NY, INC.,

               Plaintiff,

v.                                      1:23-cv-00163 (AMN/CFH)

BRIAN MOORE, CARVER COMPANIES
PAYROLL, LLC, and COEYMANS MARINE
TOWING, LLC, doing business as CARVER
TOWING,

               Defendants.
───────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **AKERMAN LLP** | **JEFFREY KIMMEL, ESQ.** |
| 1251 Avenue of the Americas, 37th Floor | **SCOTT M. KESSLER, ESQ.** |
| New York, NY 10020 | **MOHAMMAD A. YAQOOB, ESQ.** |
| *Attorneys for Plaintiff* | |
| | |
| **CAPEZZA HILL LLP** | **BENJAMIN W. HILL, ESQ.** |
| 30 South Pearl Street, Suite P-110 | **THOMAS A. CAPEZZA, ESQ.** |
| Albany, NY 12207 | **ABBY MCCORMICK-FOLEY, ESQ.** |
| *Attorneys for Defendant Brian Moore* | |
| | |
| **HODGSON RUSS LLP** | **GLEN P. DOHERTY, ESQ.** |
| 677 Broadway - Suite 401 | **SCOTT C. PATON, ESQ.** |
| Albany, NY 12207 | |
| *Attorneys for Defendants Carver Companies Payroll, LLC* | |
| *and Coeymans Marine Towing, LLC d/b/a Carver Towing* | |

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

      Presently before the Court is Defendants' motions to dismiss Plaintiff Harley Marine NY,

Inc.'s ("Harley," "HMNY," or "Plaintiff") Amended Complaint, Dkt. No. 27 (the "Amended

Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12").

Defendants Carver Companies Payroll, LLC and Coeymans Marine Towing, LLC d/b/a Carver Towing (collectively "Carver") move to dismiss all claims in the Amended Complaint against them, specifically: (1) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA"), (2) tortious interference with contractual relations under state law, and (3) unfair competition under state law.  Dkt. No. 38; Dkt. No. 38-3 at 11[1] ("Carver's Motion").[2] Defendant Brian Moore ("Moore") moves to dismiss all claims in the Amended Complaint against him, specifically: (1) two breaches of contract under state law, (2) misappropriation of trade secrets under the DTSA and the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1, *et seq*. (the "NJTSA"), (3) violations of the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38A-3 (the "NJCROA"), (4) tortious interference with economic relations under state law, and (5) unfair competition under state law.  Dkt. No. 39; Dkt. No. 39-1 at 4 ("Moore's Motion").  Harley has opposed both Motions, Dkt. No. 42, Carver and Moore replied in support of their respective Motions, Dkt. Nos. 48-49, and Harley, with permission from the Court, filed a sur-reply in response to Moore's reply, Dkt. No. 52.  The Motions are thus ripe for resolution.

    For the reasons set forth herein, the Court grants in part and denies in part each Motion.

## II.    BACKGROUND

    The parties are referred to the Court's earlier memorandum-decision and order on Harley's motion for a preliminary injunction for the background facts of the case.  *See* Dkt. No. 26 (the "PI Order"); *Harley Marine NY, Inc. v. Moore*, No. 1:23-cv-00163 (AMN/CFH), 2023 WL 3620720

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[2] Carver alternatively asks the Court to dismiss all claims against it pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. No. 38-3 at 24-32.  For the reasons discussed herein, the Court finds that considering a motion pursuant to Rule 56 before the parties have had the benefit of discovery for the surviving claims would do a disservice to the action.  *See Doroz v Columbia Place Assoc.*, 6:13-CV-1135, 2014 WL 5475289, at *1 n.1 (N.D.N.Y. Oct. 29, 2014).

(N.D.N.Y. Mar. 24, 2023).   The Court notes that although Harley submitted its Amended Complaint following entry of the PI Order, the allegations in the Amended Complaint depart only slightly from Harley's allegations in its original Complaint.   *Compare* Dkt. No. 1, *with* Dkt. No. 27.[3]   Accordingly, the facts previously discussed in the PI Order and amended and restated in the Amended Complaint are assumed to be true for purposes of ruling on the instant Motions.   *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

## III.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.   *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.   *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).   This presumption, however, does not extend to legal conclusions.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.   *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

---

[3] In total, the Amended Complaint differs by: (1) naming the appropriate Carver Defendants, *see* Dkt. No. 27 at 1; (2) clarifying that the state law claims against Moore are under New Jersey law and those against Carver are under New York law, *see id.* at ¶¶ 48-111; and (3) including new allegations concerning Moore's personal cellphone use for work, *see id.* at ¶¶ 42-43.

claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to show that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the . . . complaint must be dismissed."  *Id.* at 570.

## IV.      DISCUSSION

The Amended Complaint states one federal claim under the DTSA against each Defendant, as well as five state law claims under New Jersey law against Moore and two state law claims under New York law against Carver.  Defendants' Motions respectively seek to dismiss all claims against each Defendant for failure to state a claim under Rule 12(b)(6).  As the asserted basis for this Court's jurisdiction is the presence of federal claims in the action, *see* Dkt. No. 27 at ¶¶ 13-14 (citing 28 U.S.C. §§ 1331, 1367), the Court first considers the Motions with respect to the DTSA claims before considering the state law claims for which this Court has only pendant jurisdiction.

### A.  Plaintiff's Misappropriation of Trade Secrets Claims Against Both Defendants

The DTSA establishes a civil cause of action for the "owner of a trade secret that is misappropriated."  18 U.S.C. § 1836(b)(1).  A plaintiff asserting a DTSA misappropriation claim

must show two elements: "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret;" *Danping Li v. Gelormino*, No. 3:18-cv-442 (MPS), 2019 WL 1957539, at *8 (D. Conn. May 2, 2019) (quoting *Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 18-2177, 2019 WL 1758468, at *3 (3d Cir. Apr. 3, 2019) (non-precedential)), and, as relevant here, (2) misappropriation of that secret, defined as the "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret . . . ." 18 U.S.C. §§ 1839(5)(A)-(B)(i).[4]

### 1.   Plaintiff adequately alleges that the subject data are trade secrets

"[T]rade secrets are a subset of confidential information." *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). "For 'financial, business, scientific, technical, economic, or engineering information' to constitute a 'trade secret,' two factors must be satisfied: (A) the owner must have 'taken reasonable measures to keep such information secret'; and (B) the information must 'derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .'" *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *1 (2d Cir. Mar. 9, 2022) (summary order) (quoting 18 U.S.C. §§ 1839(3), (3)(A)-(B)).

As an initial matter, Defendants argue that Harley has insufficiently alleged that the subject information constitutes trade secrets because they have not been described with specificity. *See*

---

[4] The statutory definition of "misappropriation" goes on to further explain the "disclosure or use" standard, as distinct from the "acquisition" standard. *Compare* 18 U.S.C. § 1839(5)(B), *with id.* at § 1839(5)(A).

Dkt. No. 38-3 at 15.  The Court disagrees.  Although it is true that "a complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation[,]" *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y. 2021) (quoting *TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021)), Harley has done more than allege "categories of information," *cf*. Dkt. No. 38-3 at 15.  Indeed, Harley has alleged that Moore "accessed and downloaded" the following purported trade secrets while a management-level employee at Carver:

> various files regarding the Company's tugboats, including: (i) Stability Letters regarding each tugboat's seaworthiness; (ii) "Blue Cards" from the Company's insurance carrier in London, U.K.; (iii) Bridge Letters showing the various corporate entities who own each vessel; (iv) equipment list for each vessel; and (v) "spec sheets" showing operating and mechanical data for each tug boat such as: fuel capacity, fluid density, flow rate, and operating pressure and temperature.
> . . .
> [A] file called "Master Voyage Economics2.Numbers" ("Master Voyage"). This document contains particularly sensitive, highly confidential and proprietary information. Specifically, it is a pricing and bidding sheet with information based on internal knowledge that HMNY has accumulated over the last two decades, including but not limited to: (i) specific and actual performance of each HMNY vessel (i.e. how much fuel was burned, speed, distance); (ii) voyage runs and distances traveled; (iii) specific routes that can be operated safely; and (iv) expenses for consumables.

Dkt. No. 27 at ¶¶ 39-40; *see also id*. at ¶¶ 63-64, 72-73.  Thus, Harley's "allegations, although broad, still provide enough detail that the [D]efendants can understand what they are alleged to have misappropriated . . . ." *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 251 (S.D.N.Y. 2023) (collecting cases).  Accordingly, Harley has sufficiently pleaded the existence of confidential information with requisite specificity to be considered trade secrets. *See, e.g.*, *Tesla Wall Sys., LLC v. Related Cos.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec.

18, 2017) (finding a DTSA trade secret sufficiently described where the operative complaint "pleads numerous specific categories of information, such as technical data, internal pricing information, work product, research, engineering designs, etc.") (internal quotation marks omitted); *ExpertConnect, LLC v. Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) (finding that "client lists and client preferences, contract details, expert lists and performance criteria," were sufficiently specific, and noting that the complaint identified specific documents alleged to contain trade secrets).

### a. Reasonable measures to keep the information secret

"To succeed on a claim of misappropriation of trade secrets under the DTSA . . . the owner of the trade secret must take 'reasonable measures' to keep the proprietary information secret." *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (citing 18 U.S.C. § 1839(3); *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985)).  "'Most courts in this Circuit look to contractual confidentiality agreements or physical security measures when determining whether a party took reasonable measures to keep information secret' . . . includ[ing] 'password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality.'"  *Rodney v. United Masters*, No. 21 CV 5872 (DG)(LB), 2023 WL 2184865, at *5 (E.D.N.Y. Feb. 10, 2023) (quoting *Charles Ramsey Co. v. Fabtech-NY LLC*, No. 18-CV-546 (LEK/CFH), 2020 WL 352614, at *15, 23 (N.D.N.Y. Jan. 21, 2020)).

Defendant Carver briefly attacks Harley's efforts to keep its confidential information secret.[5]  Dkt. No. 38-3 at 27-28.  Carver is correct that allegations of "a confidentiality agreement

---

[5] The Court addresses Defendants' arguments that the alleged trade secrets are not sufficiently

alone" are often insufficient to plead reasonable measures to protect the alleged trade secret, *id*. (quoting *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 424 (S.D.N.Y. 2021)), however Harley has made additional allegations in the Amended Complaint.  Indeed, Harley alleges several steps it took to keep its alleged trade secrets from the public.  In addition to conclusory allegations that the alleged trade secrets are "confidential and not accessible in the public realm," Harley alleges that the information was in a password-protected Dropbox account, individuals with access were subject to confidentiality agreements, individuals were reminded of their obligations upon termination, and, at least with respect to the Master Voyage file, only certain individuals in the company had access to it.  Dkt. No. 27 at ¶¶ 38-41, 65, 74.  These allegations are sufficient to meet the DTSA pleading standard for reasonable efforts to protect alleged trade secrets.[6]  *See Par Pharm., Inc.*, 764 F. App'x at 278 (non-precedential) (concluding that use of non-disclosure agreements and "appropriate facility security measures" were reasonable steps to protect manufacturing procedures under the DTSA and the NJTSA); *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (finding allegations that "proprietary information was 'accessible only to parties with permission to view such information, and only after they have agreed to contracts that include strict confidentiality provisions that require them not to use or disclose this information' . . . together with [plaintiff's] claim that the secrecy of its [proprietary] processes and software help it 'maintain its competitive

---

secret to constitute trade secrets in the section immediately below, *see infra* § IV.A.1.b.

[6] The fact that Harley inadvertently failed to deactivate Moore's Dropbox account credentials upon his termination does not, as a matter of law, render meaningless Harley's confidentiality policy and reminder to Moore upon his separation that his confidentiality obligations continued beyond his employment.  Plaintiff sufficiently alleges the reasonable measures contemplated by the DTSA.  *See Zabit*, 540 F. Supp. 3d at 427 ("Plaintiffs must show only 'sufficient secrecy,' not 'absolute secrecy,' meaning that 'except by use of improper means, there would be difficulty in acquiring the information.'") (quoting *Uni-Sys., LLC v. United States Tennis Ass'n*, 350 F. Supp. 3d 143, 175 (E.D.N.Y. 2018)).

advantage in the market[,'] suffice to meet the first prong of the DTSA test"); *see also Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 04-3623, 2011 WL 3651331, at \*3, \*16 (D.N.J. Aug. 18, 2011) (finding use of license agreements, non-disclosures, and confidentiality agreements for end-users, a firewall, and confidentiality legends on printed materials were reasonable measures to protect proprietary software under New Jersey law).

### b. Independent economic value of the information

The final factor for trade secret treatment requires the plaintiff to allege "facts demonstrating that [the] alleged trade secrets derive independent economic value 'from not being generally known and not being readily ascertainable through proper means.'" *Rodney v. United Masters*, No. 21 CV 5872 (DG) (LB), 2023 WL 2184865, at \*6 (E.D.N.Y. Feb. 10, 2023) (quoting 18 U.S.C. § 1839(3)(B), and citing *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020)). Carver argues that the subject information does not qualify as trade secrets because the information is generally within the public domain and mere compilation efforts do not render the information secrets. *See* Dkt. No. 38-3 at 25-27.

In opposing the Motions, Harley maintains its position that "all of th[e] information is not publicly available," Dkt. No. 42 at 14 (citing, *inter alia*, Dkt. No. 27 at ¶ 65), despite Carver's argument that "all of the information characterized by Plaintiff as a 'trade secret' is, in fact, publicly available through a variety of on-line resources," Dkt. No. 38-3 at 25-26. Even crediting Carver's assertion, the Amended Complaint alleges sufficient specific details about its confidential information, *see supra* § IV.A.1 (quoting Dkt. No. 27 at ¶¶ 39-40, and citing *id*. at ¶¶ 63-64, 72-73), for the Court to find that they "derive independent economic value from not being generally known and not being readily ascertainable through proper means." *Rodney*, 2023 WL 2184865, at \*6; *accord loanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22 CIV. 5971 (LGS), 2023

WL 3884032, at *7 (S.D.N.Y. June 8, 2023) (observing that "Defendants [ ] took the information with them when they left [plaintiff] -- even though that information purportedly could be replicated through independent means -- which strongly suggests a desire to avoid the potentially painstaking effort to research, compile and collate client contact information"); *see also N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) ("A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret ....") (quotation marks omitted); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (party sufficiently pleaded trade secret protection by alleging that it "expended considerable resources, both financial and in personnel time, developing this non-public information," an "extremely valuable asset[] of the company"); *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *4 (D.N.J. Aug. 12, 2019) ("Customer lists, pricing information, and marketing techniques constitute trade secrets under New Jersey law and the DTSA."); *ExpertConnect, L.L.C. v. Fowler*, No. 18 CIV. 4828 (LGS), 2019 WL 3004161, at *5 (S.D.N.Y. July 10, 2019) ("the Complaint alleges that the documents Defendants took were trade secrets . . . because the information *could be used* to underprice [Plaintiff] and divert customers") (internal quotation marks omitted, emphasis added).

### 2. Plaintiff adequately alleges misappropriation through improper acquisition against both Defendants

"'Misappropriation' entails '(1) acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent.'" *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404-05 (S.D.N.Y. 2021) (quoting *ExpertConnect*, 2019 WL 3004161, at *5-6); 18 U.S.C. §§ 1839(5)(A)-(B). "'Improper means' can involve 'theft or breach or inducement of a breach of a duty to maintain secrecy,' including contractual agreements not to disclose or

disseminate information." *ExpertConnect*, 2019 WL 3004161, at *6 (quoting 18 U.S.C. § 1839(6)(A), and citing *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017)).

Defendants' arguments that the DTSA requires use or disclosure in addition to misappropriation are misplaced.[7]  *See Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 CIV. 8159 (GBD), 2021 WL 3541152, at *5 (S.D.N.Y. Aug. 11, 2021) ("the DTSA provides for 'three theories of liability: (1) acquisition, (2) disclosure, or (3) use'") (quoting *Integra USA, Inc. v. Grain*, No. 19-CV-8752 (JPO), 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019)).  When one acquires information as part of their job duties, they are not using improper means.  *See Zurich*, 538 F. Supp. 3d at 405 (dismissing DTSA claim where the "[defendant] was authorized to acquire th[e] information as part of his job, so he did not acquire it by improper means").  However, Harley has alleged that on at least three occasions following the termination of his employment with Harley and after he had stated working as a management-level employee with Carver, Moore used his Harley account credentials to view and download Harley's documents.  This is sufficient to meet the misappropriation by improper acquisition burden at the pleading stage as to Moore.[8]  18

---

[7] Defendants rely on caselaw interpreting a claim of trade secret misappropriation under New York law, not the DTSA.  *See, e.g.*, Dkt. No. 48 at 7-8 (citing, *inter alia*, *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 269-74 (W.D.N.Y. 2018) (dismissing a claim of "misappropriation of a trade secret under New York law")); *see also Marina Dist. Dev. Co. v. AC Ocean Walk LLC*, No. 1:20-CV-15719-NLH-KMW, 2021 WL 1526552, at *5 (D.N.J. Apr. 19, 2021) (discussing *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273 (3d Cir. 2019) (non-precedential), another case relied upon by Defendants, and concluding that "[s]imply put, misappropriation [under the DTSA and NJTSA] does not require a party to demonstrate both acquisition and disclosure or use").

[8] On the other hand, had Moore relied only on his personal recollections from his years as a Harley employee, without allegedly refreshing his recollection by accessing and downloading Harley's files, Harley's DTSA claim would likely fail to withstand Rule 12 scrutiny because there would have been no improper acquisition.  *See, e.g.*, *Altman Stage Lighting, Inc. v. Smith*, No. 20 CV 2575 (NSR), 2022 WL 374590, at *6 (S.D.N.Y. Feb. 8, 2022) ("alleged facts that suggest Defendant acquired the Grow Light through improper means, including . . . secret acquisition of the prototype . . . create a plausibility that Defendant's conduct was wrongful").  But that is not Plaintiff's allegation here, despite Moore's assertions to the contrary.  *Compare* Dkt. No. 27 at

U.S.C. §§ 1839(5)(A), (6)(A); *see, e.g.*, *Shrink Packaging Sys. v. Kist*, No. 22-CV-04967, 2023 WL 5664733, at *7 (D.N.J. Sept. 1, 2023) (denying motion to dismiss DTSA and NJTSA claims where "Plaintiff alleges that [Defendant] exceeded his authority by sending the information to his personal email and thus acquired it in his personal capacity by improper means"); *ExpertConnect*, 2019 WL 3004161, at *6 ("The Complaint plausibly alleges that [individual defendants] took the trade secrets for purposes unrelated to their employment at [plaintiff] by pleading that [a defendant] downloaded a document" outside of the scope of his employment.).

As for Carver, Harley has sufficiently alleged that Moore's improper acquisition should be imputed to Carver on an agency theory due to Moore's function as a general manager at Carver. *See* Dkt. No. 27 at ¶¶ 73, 77; *see, e.g.*, *loanDepot.com, LLC*, 2023 WL 3884032, at *7 (finding a DTSA claim against a subsequent employer plausible despite the subsequent employer's "Employee Agreement and Confidentiality Information Acknowledgement that all of the Individual Defendants signed" that "contained acknowledgements that Individual [Defendants] did not retain, and would not use, confidential information" of their prior employer, the plaintiff). Despite Carver's arguments to the contrary, the Amended Complaint plausibly alleges that Moore misappropriated Harley's trade secrets while a management-level employee at Carver, not merely that Moore joined Carver after misappropriating Harley's trade secrets.[9] *See Onyx Renewable Partners L.P. v. Kao*, No. 22-CV-3720 (RA), 2023 WL 405019, at *5 (S.D.N.Y. Jan. 25, 2023)

---

¶¶ 38-40, *with* Dkt. No. 49 at 9 ("Moore did not *acquire* trade secrets and confidential information; he already had that information.").

[9] Given that Plaintiff has adequately alleged improper acquisition sufficient to deny the Motions as to the DTSA claims, the Court does not now consider the parties' arguments concerning Defendants' liability premised on use or inevitable use or disclosure. *See Corp. Synergies Grp.*, 2019 WL 3780098, at *7 (the DTSA and NJTSA "permit[ ] a party to rely on the inevitable disclosure doctrine" to state a claim) (citing *Osteotech, Inc. v. Biologic, LLC*, No. 07-1296, 2008 WL 686318, at *3 (D.N.J. Mar. 7, 2008)).

("The DTSA's definition of 'use' includes any effort to avail oneself of a trade secret.") (citing *KCG Holdings, Inc. v. Khandekar*, No. 17-CV-3533 (AJN), 2020 WL 1189302, at *11 (S.D.N.Y. Mar. 12, 2020)); *cf.* Dkt. No. 27 at ¶¶ 73, 77; Dkt. No. 48 at 9 (citing *R.R. Donnelley & Sons Co. v Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020)).   Accordingly, Carver's Motion is also denied as to Harley's DTSA claim.

### B. Plaintiff's State Law Claims Against Moore

Having determined that Harley's federal claims against both Defendants survive dismissal, the Court proceeds to consider Harley's state law claims.

#### 1. Plaintiff's state law misappropriation claim survives dismissal

In addition to the DTSA misappropriation claim against Moore, the Amended Complaint also states a claim for misappropriation under the NJTSA against Moore.   The test for what a plaintiff must demonstrate to prove misappropriation of a trade secret is so similar under the DTSA and NJTSA that the analysis "fold[s]" into one another.  *Corp. Synergies Grp.*, 2019 WL 3780098, at *3.   A plaintiff can show the existence of a trade secret by alleging that the "information [has] independent economic value that the owner has taken reasonable measures to keep secret."  *Id.* Since the Court holds that the Amended Complaint sufficiently states a claim against Moore for misappropriation under the DTSA, Harley's NJTSA misappropriation claim against Moore similarly survives Moore's Motion.

#### 2. Breach of Contract Claim

Harley alleges that Moore violated two types of restrictive provisions of the Confidentiality Agreement: the confidential information provisions and the nonsolicitation provision.   "The elements of a breach of contract claim under New Jersey law[10] are: '(1) the existence of a valid

---

[10] Moore does not dispute that the breach of contract claim is governed by New Jersey law.  *See*

contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages.'" *Am. Fin. Res., Inc. v. Money Source, Inc.*, No. 14-1651 (JLL), 2014 WL 1705617, at *8 (D.N.J. Apr. 29, 2014) (quoting *Sheet Metal Workers Int'l Assoc. Local Union No. 27 v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)). "So long as a plaintiff points to a contractual provision and alleges the requisite elements, a breach of contract claim will survive a motion to dismiss." *Rodgers Grp., LLC v. Lewis*, No. 22-482 (MAS) (TJB), 2022 WL 4095785, at *5 (D.N.J. Sept. 7, 2022) (citing *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13-1895, 2013 WL 3508835, at *6 (D.N.J. July 11, 2013)).

A restrictive covenant, such as those contained in the Confidentiality Agreement, "is enforceable if it is reasonable." *Money Source,* 2014 WL 1705617, at *8 (citing *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576 (1970)). "A restrictive covenant 'will generally be found to be reasonable where it [1] simply protects the legitimate interests of the employer, [2] imposes no undue hardship on the employee, and [3] is not injurious to the public.'" *Id*. (citing *Solari*, 55 N.J. at 576). If a restrictive covenant, or a portion thereof, is unreasonable, a court "may either disregard it or partially enforce it 'to the extent reasonable under the circumstances.'" *Id*. (quoting *Cmty. Hosp. Grp. v. More*, 183 N.J. 36, 57-58 (2005)).

### a. Harley adequately alleges a breach of the confidentiality provisions

The Confidentiality Agreement between Moore and Harley contains three clauses concerning Harley's trade secrets and confidential information:

> **1. Trade Secrets and Confidential Information.** Employee recognizes and agrees that he/she shall treat as confidential and proprietary all aspects of the Employer's business that is not generally known to the public including, but not limited to, customer

---

Dkt. No. 39-1 at 5-6.

identities and information, rates charged/billed, services performed, contract terms, the history of the relationship between the Employer and its customers, and the identity of customers' contracting agencies; pricing information; sales information; prospect lists; policy manuals; procedure manuals and techniques; business financial data and records; staffing, organizational structures and compensation/benefit programs, to include employment contracts; information programs and systems; information relating to any pending or potential future litigation, to include investigations by any federal or state agencies or other regulatory agencies; training techniques; and all other forms of technical and proprietary information which was developed by the Employer.  Employee also agrees never, directly or indirectly, to use, disseminate, disclose, or otherwise reveal any such information or material to any person, firm, corporation, association, or other entity doing, or planning to do, business in competition with the Employer for any reason or purpose whatsoever without the prior written consent of the Employer.

**2. Property of the Employer.** Employee agrees that the originals and copies of all files, records, lists, specifications, documents, equipment and software, whether prepared by the Employer or a product of other employees, are and shall remain the exclusive property of the Employer.  The above mentioned information will not be used or retained by the Employee except in the course of employment by the Employer.  Upon termination of employment or at the request of the Employer at any time, all such items in the possession of the Employee shall be returned to the Employer.

**4. Confidentiality Obligations Continue After Employment Ends.** Employee understands and acknowledges that his or her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information, whether before or after he or she begins employment by the Employer, and shall continue during and after his or her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

Dkt. No. 27 at ¶¶ 20-21.  Harley alleges that Moore "violated these [confidentiality] provisions of

the Confidentiality Agreement by accessing and downloading various confidential files regarding

[Harley's] tugboats weeks after the end of his employment."  *Id*. at ¶ 51.  As damages from the

alleged breach, Harley alleges that it has "not received the benefit of the bargain associated with the Confidentiality Agreement with B. Moore, and will suffer an even greater harm if B. Moore is not enjoined from sharing HMNY's confidential information with Carver thereby further breaching the agreement." *Id*. at ¶ 52.

Moore first argues that the Amended Complaint fails to state a claim for breach of the confidentiality provisions of the Confidentiality Agreement because they only proscribe use, dissemination, disclosure, or other revelation of the confidential information, not the "access and download" conduct pleaded. Dkt. No. 39-1 at 6. Additionally, Moore argues that the Amended Complaint fails to allege damages from the breach other than loss of the benefit of the bargain. *Id*. at 6-7. Moore does not challenge the validity of this provision, post-employment or otherwise. *Id*.

As to Moore's first argument, the Court agrees with Harley that Moore ignores the language of paragraph 2 of the Confidentiality agreement which specifically proscribes an employee's "us[ing] or retain[ing]" Harley's confidential information "except in the course of employment" with Harley. Dkt. No. 27 at ¶ 20. Accordingly, the Amended Complaint's allegations that Moore accessed and downloaded confidential Harley files while employed by Carver sufficiently meet the burden to plead the breach element of the claim.

Moore's argument that the Amended Complaint inadequately alleges damages presents a closer call. However, "[t]he New Jersey Supreme Court has distinguished a claim for breach of contract—a cause of action that does not require proof of actual damages—from the tort of negligence, which requires showing both 'a breach of duty and resulting damage to prevail.'" *Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, No. 20-18781 (ZNQ) (TJB), 2022 WL 17132156, at *3 (D.N.J. Nov. 22, 2022) (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 45-46 (1984) and collecting cases). As such, Harley has sufficiently alleged

damages with respect to this claim.  Moore's reliance on caselaw concerning Article III standing to bring a non-breach of contract claim is inapposite.  *See* Dkt. No. 49 at 9 (citing *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *11 (D.N.J. Dec. 16, 2021)).  Accordingly, Moore's Motion is denied as to the claim for breach of the confidentiality provisions of the Confidentiality Agreement.

### b.  Harley fails to allege a breach of the nonsolicitation provision

Moore argues that the Confidentiality Agreement's nonsolicitation provision does not apply post-employment, while the Amended Complaint only alleges post-employment solicitation conduct by Moore.  *See* Dkt. No. 39-1 at 8.  In Reply, Moore took his argument a step further and posited that the nonsolicitation provision was not enforceable at all as a matter of law because it lacked a reasonable temporal limitation.  *See* Dkt. No. 49 at 10.  The Court permitted Harley to submit a sur-reply brief on this point, which Harley did.  Dkt. No. 52.

The nonsolicitation provision states, in total, that "Employee agrees they will not directly or indirectly solicit, induce, or otherwise persuade employees to leave HMS to work for or with Employee or a third party."  Dkt. No. 27 at ¶ 22.  Harley's arguments that the provision is not limited to conduct during employment is belied by the plain language of the provision.  *See* Dkt. No. 42 at 23-24; *Maryland Cas. Co. v. W.R. Grace & Co. - Conn.*, No. 88 CIV. 4337 (JSM), 1994 WL 167962, at *6 (S.D.N.Y. Apr. 29, 1994) ("both New Jersey and New York law require that clear and unambiguous contract language be interpreted consistently with its plain meaning"), *adhered to on reargument*, 1994 WL 465843 (S.D.N.Y. Aug. 25, 1994).  Notably, unlike with the confidentiality provisions of the Confidentiality Agreement, the nonsolicitation provision does not include a clause stating that the obligations continue after employment ends.[11]  *See* Dkt. No. 27 at

---

[11] Harley acknowledges that its interpretation is at best implied, *cf*. Dkt. No. 42 at 23 ("where B.

¶ 21 (stating that Moore's "obligations under this Agreement *with regard to any particular Confidential Information* shall . . . continue during *and after* his or her employment by the Employer") (emphasis added); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 228-29 (3d Cir. 2018) (observing that "[u]nder New Jersey law, 'courts should enforce contracts as the parties intended,'" "by examining the 'plain language of the contract,' 'the surrounding circumstances, and the purpose of the contract,'" and "'contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous'") (quoting respectively *Pacifico*, 190 N.J. at 266, *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 115 (2006), and *Carter v. Exxon Co. USA*, 177 F.3d 197, 206 (3d Cir. 1999)); *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) ("Under New Jersey law, [courts] must interpret the parties' contract according to its plain language, by "reading the document as a whole in a fair and common sense manner.") (internal citation and quotation omitted).

The Amended Complaint alleges that "Moore breached his contractual obligation by inducing three HMNY employees to leave HMNY to work for Carver mere weeks after he himself left HMNY." Dkt. No. 27 at ¶ 54; *see also id.* at ¶¶ 27-33. Although Harley argues that "the Amended Complaint does not state that he only solicited the other employees of HMNY *after he*

---

Moore's post-employment obligations are *explicitly* stated in the agreement, he is also referred to as 'Employee'") (emphasis added) (citing the confidentiality provisions), which further makes Harley's interpretation disfavored as it drafted the agreement, *Doynow Sales Assocs. v. Rocheux Int'l of New Jersey, Inc.*, 647 F. Supp. 2d 296, 308 (S.D.N.Y. 2009) (quoting *Pacifico v. Pacifico*, 190 N.J. 258, 267 (2007), and collecting cases). Furthermore, Harley's interpretation would mean that "nothing in the Non-Solicitation clause [could] be construed as limiting B. Moore's obligations not to solicit," which means there would be a complete lack of "some temporal limitation" on Moore's obligation not to solicit. Dkt. No. 42 at 23; Dkt. No. 52 at 4-5. This type of broad interpretation of restrictive covenants is also disfavored. *See Webcraft Techs. v. McCaw*, 674 F. Supp. 1039, 1047 (S.D.N.Y. 1987) (noting that restrictions including those that "bar the employee without time limitation . . . are broader . . . than courts are likely to enforce" and warning against "[t]oo great a readiness on the part of courts to preserve the valid portions of overbroad restrictions" although "courts should generally try to preserve what is valid in a contract").

18

*left HMNY*" and that "HMNY believes that the solicitations started before B. Moore left its employment," Harley declines to point to any allegation in the Amended Complaint to support this contention.[12]  Dkt. No. 42 at 24.  Finding none, the Court grants Moore's Motion and dismisses the claim for breach of the nonsolicitation provision of the Confidentiality Agreement.

### 3.  NJCROA Claim

Moore argues that Harley's claim against him pursuant to the NJCROA fails to plausibly state a claim because it fails to allege actual damages.  Dkt. No. 39-1 at 11-12.  The NJCROA specifies that a claimant needs to have been "damages in business or property" as a result of certain conduct.  N.J.S.A. § 2A:38A–3.  Harley has clearly alleged the requisite conduct in question, namely "[t]he purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system, or computer network[.]"  *Id*.  However, unlike Harley's DTSA and breach of contract claims against Moore, the NJCROA claim has a clear requirement for pleading actual damages.  *McGillvary v. Riez*, No. 22-6430 (MAS) (JBD), 2023 WL 8066155, at *5 (D.N.J. Nov. 20, 2023) ("By its very nature, such a claim requires damage to business or property.").

Here, the Amended Complaint fails to adequately allege actual damages as a result of the conduct at issue.  Indeed, Harley's allegations are bereft of any claimed damages beyond a boilerplate recitation of such damages.  *See* Dkt. No. 27 at ¶ 85 (noting Harley has suffered "damages, including, without limitation, divulgement of its proprietary and confidential information and loss of economic advantage, and, accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.").  Such claims for damages that might be revealed through

---

[12] The Court notes that Harley also declined to include allegations related to an employee who submitted sworn testimony in support of Harley's earlier motion practice, *see Harley Marine NY, Inc. v. Moore*, No. 1:23-cv-00163 (AMN/CFH), 2023 WL 3620720, at *2 (N.D.N.Y. Mar. 24, 2023); Dkt. No. 20-1 at 2 (discussing a conversation with Moore involving putative solicitation while still a Harley employee), but nevertheless dismisses this claim with leave to amend.

the litigation process are conclusory and not credited in the face of a Rule 12 motion. *See Shrink Packaging Sys. v. Kist*, No. 22-CV-04967, 2023 WL 5664733, at *6 (D.N.J. Sept. 1, 2023) ("Plaintiff's statement that it 'has been damaged in an amount to be proven at trial' is a conclusory allegation."); *cf. Rodgers Grp., LLC v. Lewis*, No. 22-482 (MAS) (TJB), 2022 WL 4095785, at *8 (D.N.J. Sept. 7, 2022) (denying motion to dismiss NJCROA claim where the operative complaint "details at great length the business damages it suffered because Defendants took [Plaintiff's] proprietary information"). Accordingly, Moore's Motion is granted as to Harley's NJCROA claim.

### 4. Interference with Economic Relationships Claim

The Amended Complaint alleges a New Jersey common law[13] tort claim against Moore for interference with economic relations predicated on Moore's violation of the Confidentiality Agreement's nonsolicitation provision. Dkt. No. 27 at ¶ 90 ("HMNY had a reasonable expectation that B. Moore would not solicit its employees to work for another employer in violation of the Confidentiality Agreement that he undoubtedly signed prior to his employment with HMNY."). Having found above that Harley did *not* have a reasonable expectation that Moore would not solicit Harley's employees after Moore left Harley, *see supra* § IV.B.2.b, the Court grants Moore's Motion as to this claim. *See, e.g.*, *Beverly Hills Motoring, Inc. v. Morici*, No. 14-756 (FSH), 2015 WL 248352, at *4 (D.N.J. Jan. 20, 2015) (dismissing tortious interference claim where plaintiff

---

[13] Moore does not meaningfully contest that New Jersey law applies to Harley's non-contract claims. *See* Dkt. No. 39-1 at 13. While Moore argues that the New Jersey claims should be dismissed because New York law applies, Dkt. No. 39-1 at 15-16, he does not argue that the laws of the two states conflict, that is, that different outcomes would occur if the Court applied New York rather than New Jersey law. *See Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 203 (N.D.N.Y. 2011) ("In determining which state's law to apply in tort actions, New York courts undertake a different analysis than they do in contract cases. First, the Court must consider whether an actual conflict exists between the state laws that are implicated here.").

did not proffer specific allegations of a reasonable expectation of economic advantage).

### 5.  Unfair Competition Claim

The Amended Complaint alleges that "Moore violated his duty of good faith and fair dealing by maliciously downloading HMNY's proprietary and confidential information in express violation of his Confidentiality Agreement."  Dkt. No. 27 at ¶ 103.  "In New Jersey, unfair competition is commonly invoked for claims similar to misappropriation of trade secrets," and "protects more information than a traditional trade secret claim."  *Heartland Payment Sys., LLC v. Carr*, No. 3:18-cv-09764-BRM-DEA, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021) (quoting *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 386-87 (3d Cir. 2016)); *Marjam Supply Co. v. Firestone Bldg. Prod. Co.*, No. CIV. 11-7119 (WJM), 2012 WL 6005709, at *6 (D.N.J. Nov. 30, 2012) ("Under New Jersey law, the tort of unfair competition generally consists of the misappropriation of one's property which has some sort of commercial or pecuniary value.") (citation omitted).   Here, because the Court holds that Harley's DTSA and NJTSA misappropriation claims against Moore survive dismissal, the Court declines to dismiss Harley's unfair competition claim against Moore since confidential information need not rise to the level of a trade secret for a plaintiff to state a New Jersey unfair competition claim.

### C.  Plaintiff's State Law Claims Against Carver

The remaining claims are Harley's New York tort claims against Carver for interference with contractual relationships and unfair competition.

### 1.  Interference with Contractual Relationships Claim

The Amended Complaint alleges that "Carver hired and continues to employ B. Moore for the purpose of accessing the company's confidential and proprietary information, which has, and continues to cause B. Moore to breach his Confidentiality Agreement."  Dkt. No. 27 at ¶ 97.  The

parties agree on the relevant standard under New York law: "the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'"  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402-03 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). Carver moves to dismiss for two reasons: First, Harley fails to allege that Carver had knowledge of the Confidentiality Agreement when it hired Moore, the second element; and second, Harley fails to allege that Carver caused Moore's breach of the Confidentiality Agreement, the third element.

The Court finds that the Amended Complaint fails to allege facts sufficient to meet the third element required to plead the claim.  Harley makes the conclusory allegation that Carver hired Moore "for the purpose of accessing the company's confidential and proprietary information."  Dkt. No. 27 at ¶ 97.  However, Moore and his future employer should have expected that Moore's access to Harley materials through the Dropbox account would be terminated upon Moore's termination from Harley, and nothing in the Amended Complaint would support a contrary expectation.  *See id.* at ¶¶ 38, 42.  Therefore, Harley's conclusory allegation is not entitled to acceptance as truth for the purpose of resolving Carver's Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court is not required to accept as true or draw inferences in favor of legal conclusions).  As such, the Court grants Carver's Motion as to the Amended Complaint's claim for tortious interference with contract.

### 2.  Unfair Competition Claim

The Amended Complaint alleges that "Carver engaged in unfair competition by hiring and

continuing to employ B. Moore, on information and belief, for the purpose of accessing HMNY's confidential information for competitive benefit."  Dkt. No. 27 at ¶ 108.  Under New York law, "[a] claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action."  *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 376 (N.D.N.Y. 2021) (quoting *Uni-Systems, LLC v. United States Tennis Assoc.*, 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018), and collecting cases).  As with Moore's Motion, because the Court has held that Harley's DTSA and NJTSA misappropriation claims survive Defendants' Motions, the Court declines to dismiss Harley's unfair competition claim as to Carver since confidential information need not rise to the level of a trade secret for a plaintiff to state a New York unfair competition claim.  *See, e.g.*, *Charles Ramsey Co. v. Fabtech-NY LLC*, No. 1:18-CV-0546 (LEK/CFH), 2020 WL 352614, at *18 (N.D.N.Y. Jan. 21, 2020) (holding that the plaintiff "has stated a claim for unfair competition against both [defendants because] '[v]aluable confidential information' about a business' sales and customers is protected by the law of unfair competition"); *ExpertConnect, L.L.C. v. Fowler*, No. 18 CIV. 4828 (LGS), 2019 WL 3004161, at *10 (S.D.N.Y. July 10, 2019) (a claim of unfair competition under New York law "must plead that the defendant's acts proximately caused the misappropriation, not that the misappropriation proximately caused the loss of clients"); *Beverage Mktg. USA v. S. Beach Beverage Co.*, 799 N.Y.S.2d 242, 244 (2d Dep't 2005) ("allegations that the defendants exploited proprietary information and trade secrets acquired by the defendant . . . during his employment as a vice president of the plaintiff . . . are sufficient to state a cause of action for unfair competition").

## V.       CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Carver's Motion to Dismiss, Dkt. No. 38, is **GRANTED in part and**

**DENIED in part**; and the Court further

ORDERS that Moore's Motion to Dismiss, Dkt. No. 39, is **GRANTED in part and DENIED in part**; and the Court further

ORDERS that the Motions, Dkt. Nos. 38-39, are **DENIED** as to Harley's claims in the Amended Complaint, Dkt. No. 27, for breach of the confidentiality provisions of the Confidentiality Agreement against Moore, misappropriation under the Defend Trade Secrets Act against Moore and Carver, misappropriation under the New Jersey Trade Secrets Act against Moore, and unfair competition against Moore and Carver, which claims survive dismissal; and the Court further

ORDERS that Harley's claims in the Amended Complaint for breach of the nonsolicitation provision of the Confidentiality Agreement, violation of the New Jersey Computer Related Offenses Act, and tortious interference with economic relations against Moore are **DISMISSED without prejudice and with leave to further amend**, and Harley's claim for tortious interference with contractual relations against Carver is **DISMISSED with prejudice and without leave to further amend**; and the Court further

ORDERS that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>February 9, 2024</u>
      Albany, New York

Anne M. Nardacci
U.S. District Judge